DONALDSON IRON CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5762.   Promulgated January 7, 1928.

*C. J. McGuire, Esq., J. Marvin Haynes, Esq., W. C. Magathan, Esq.,* and *D. M. Russell, C. P. A.,* for the petitioner.
*John D. Foley, Esq.,* for the respondent.

OPINION.

STERNHAGEN: The petitioner presented four issues in its pleading but only two of these were pressed at the hearing or supported by evidence and need therefore be considered here or decided. By the first issue raised the petitioner contends that the surplus to be included in its invested capital should include numerous capital expenditures (properly depreciated) for plant and equipment which from the time of its organization in 1886 until March 24, 1916, had been entirely written off as current expenses. The second contention is that by reason of this accounting practice the book value of its depreciable assets on March 1, 1913, was less than the fair market value and that it is entitled to a determination of such fair market value as the basis for its annual deductions within the taxable years for exhaustion, wear and tear and obsolescence. These are both questions of fact to be decided upon a preponderance of the evidence, and it should be said at the outset that all of the evidence in the record has been carefully considered. It would, however, serve no useful purpose to recount the evidence covered by a trial which consumed several days.

It is well settled as a matter of law that in ascertaining the earned surplus to be included within invested capital as provided by section 207 of the Revenue Act of 1917 and section 326 of the Revenue Act of 1918, the capital accounts shown by the books are not conclusive and that there may be restored to such surplus any amounts which truly represent capital investment at the beginning of the year but which by reason of inadvertence or irregular accounting practices were written off the accounts. *Union Metal Mfg. Co.*, 1 B. T. A. 395;

*Gilliam Mfg. Co.*, 1 B. T. A. 967; *Goodell-Pratt Co.*, 3 B. T. A. 30; *Rockford Brick & Tile Co.*, 4 B. T. A. 313; *James T. Clark Co.*, 5 B. T. A. 1291. To do this, however, a taxpayer must establish by a preponderance of the evidence that such capital expenditures were in fact made and that after proper allowance for depreciation and other intervening circumstances the amount claimed to be restorable is in fact an existing asset of the cost claimed. It must also be reasonably clear that the amount claimed for restoration does not include appreciation in value since acquisition. *La Belle Iron Works* v. *United States*, 256 U. S. 377. Simply stated, the amount to be restored is original capital cost less actual depreciation to the beginning of the taxable year.

In the present case the taxpayer charged to expense practically all of its capital expenditures for 30 years preceding 1916. It seeks to restore the depreciated cost of all its property in existence on January 1, 1917, and the beginning of each year thereafter. It has in its records the actual cost of some of these assets, but as to most of the assets the actual cost is not available. As to those which are covered by actual cost records there is substantially no dispute. In order to prove the surplus remaining in the assets not covered by its existing cost records, the taxpayer has caused a careful study to be made by an appraisal company and has proved in detail, through the testimony of all of the persons engaged in the study, the various steps used in arriving at the probable actual cost and the intervening depreciation. Every item of plant assets was examined, and by reference to existing data its probable cost fully installed upon the date of acquisition was determined. By reference to its observed condition, an estimate was made of the accrued depreciation subsequent to acquisition, and by applying this to the probable original cost the depreciated capital cost was arrived at as of March 24, 1916, when the study was completed. The probable correctness of these figures was supported by putting in the record all of the data used in the course of the study; and thus we have a complete inventory and history of the petitioner's assets, with source references for every fact or assumption used, and an oral exposition of the method by which this data was translated into an ultimate depreciated cost.

The respondent introduced no countervailing evidence either to support the figures used by him or to establish any figures other than those proposed by the taxpayer. He contented himself with testing by cross-examination the soundness of the petitioner's study.

In the main we have found the figures of the petitioner to be supported by the evidence. In so far as they included items in contravention of earlier decisions of the Board, such as so-called indirect costs like taxes, interest, and insurance during construction, we have adjusted the valuations downward. *Columbia Theatre Co.*, 3 B. T. A.

622; *Ottawa Park Realty Co.*, 5 B. T. A. 474; *Spring Valley Water Co.*, 5 B. T. A. 660; *Eastern Rolling Mill Co.*, 5 B. T. A. 663. We have also eliminated items acquired in 1886, presumably from the Ormrod Fisher Co., as part of the original acquisition upon organization. These, so far as the record shows, were not excluded by the respondent in the determination of invested capital and ought not therefore to be involved in any demand for restoration. Obviously to the extent that the costs of 1886 covered property which had been purchased originally by the petitioner's predecessor and turned over to the petitioner in exchange for stock, it would be included in invested capital not as surplus but as property paid in for stock or shares, and unless it can be shown that this is not the situation, such property (except where actual cost is shown) must be excluded. The exclusion must be of entire original cost undepreciated, since the evidence does not disclose the extent or amount of its depreciation. The result of these adjustments has been to find the asset costs set forth in our findings of fact, and invested capital should therefore be adjusted to include plant assets at $476,437.50 plus later additions as found and such land items the actual cost of which appears in evidence. Since the respondent's computation is not clear, we can not find specifically how this amount is allocated as between capital stock and surplus.

The second issue, although somewhat similar in its proof, is entirely different in its legal nature. The respondent, finding that the books disclosed certain asset values on March 1, 1913, applied depreciation rates thereto and limited the deduction for exhaustion, wear and tear and obsolescence of the taxable years to such book assets. The taxpayer contends that by section 234 (a) (7) it is entitled in the taxable years to an allowance for the exhaustion of all its plant properties owned on March 1, 1913, upon the basis of their fair market value on March 1, 1913; and that since the books have incorrectly eliminated many capital items, it is entitled to prove their existence and value on March 1, 1913, as the basis for the exhaustion allowance. The parties have agreed, as stated in the findings, upon the rates to be applied after the March 1, 1913, values are determined. In determining such values the petitioner, in a manner similar to that already described in the ascertainment of original costs, satisfactorily proved the cost of reproduction new less depreciation to March 1, 1913, of all assets owned and in existence on that date. Confronted with the decisions of the Board in *Rockford Malleable Iron Works*, 2 B. T. A. 817; *Tibby-Brawner Glass Co.*, 2 B. T. A. 918, and others, and guided by *Paducah Water Co.*, 5 B. T. A. 1067, the petitioner then introduced some evidence to prove fair market value. It appears, however, that the alleged fair market value on March 1, 1913, also included certain factors of so-called indirect cost which are not depreciable and are therefore not properly to be

included in the valuation of the physical properties to which the depreciation rate is to be applied. *Paducah Water Co., supra.* See also *Columbia Theatre Co., supra; Ottawa Park Realty Co., supra; Spring Valley Water Co., supra; Eastern Rolling Mill Co., supra.* We have therefore eliminated from the March 1, 1913, valuation claimed such amounts as the record indicates are properly attributable to these nondepreciable items, and have found the values as shown by the foregoing findings of fact. To these values it is a simple matter to apply the stipulated rates of depreciation in order to ascertain the exhaustion allowances.

In computing both the restored depreciated costs for invested capital purposes and the exhaustion allowances, it is of course necessary to make the adjustments by way of intervening additions up to the beginning of each of the taxable years involved, and also whatever intervening depreciation has occurred. These facts are clear in the record and need not be stated here in detail. What we have said is sufficient to indicate the basis for the computation of the correct deficiencies, if any.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by LANSDON, GREEN, and ARUNDELL.